Good morning, Your Honor. Good morning, Justice Breyer. Mr. W. Katzenbach, appearing for the plaintiff. There are two issues in this case, one involving the denial of Rule 60 motion, one involving a list of trial errors primarily dealing with jury instructions and some evidentiary ones that are set out in the briefs. I'm sure the Court's familiar with them, so let me move to a few to try to talk briefly about what I think are the most important issues here. First, I'll ask to Just so you're aware of it, what looks like a microphone is not amplification. It's just a recording device, so if you want to amplify, just speak up. I'll try to speak louder on that. I was told by the clerk to try to adjust the microphone for the quality of the audio, and so assuming she had at least equal dignity on that point, Absolutely, a little higher dignity on that point. I've been here four years. I still haven't figured it out, so go ahead. Yes, Your Honor. On the Rule 60 motion, I think the primary thrust of our arguments is that the judge, in rejecting the Rule 60 motion, was basically ignoring the role of the jury, because on the evidence that we have presented, Mr. Freitas's credibility became key. And that was an issue that should have been submitted to the jury on the duty of fair representation case. As we pointed out in the brief, and I'll reiterate again, that what Mr. Freitas claimed to have no knowledge of on the summary judgment motion, he had no trouble recalling Mr. Cotswold, wasn't there a prior appeal in this case involving the breach of the duty of fair representation? Yes, there was. And in the dismissal or grant of summary judgment dismissing, that claim was upheld by a prior panel? That is correct. So that is now law of the case with regard to Mr. Olson, correct? That is law of the case, except, of course, for the Rule 60 motion, which was, of course, based on new evidence following the summary judgment motion. So does the clock begin to run? Do we look back to the date of the prior panel's  Well, Your Honor, procedurally, what occurred is that during the pendency of the prior appeal, we filed the Rule 60 motion. But was it within a year? Oh, yes, it was within a year, yes. And yes, so there's been no issue on timeliness, though the prior appeal does make it a little funny. And so our issue at this point was that what Mr. Freitas claimed no knowledge of at the time of the summary judgment motion, he had no trouble recalling at a panel hearing, a Penisters joint panel hearing six months later, namely the identity of other individuals. What do you do with the district judge's comment or finding distinguishing, based on the questions that were posed to him during discovery, that there was a difference in how employees were treated who had suffered job-related injuries as opposed to off-the-job injuries? I don't believe he raised that in discovery precisely. What he did was my client raised one example that my client had independently discovered. Mr. Freitas summarily dismissed that, saying, oh, that case involved an industrial injury. What we didn't know – now, the district court took the position that Mr. Freitas was raising that distinction then in connection of the time of the summary judgment. I don't believe that's quite accurate. What he was doing was simply dismissing whatever evidence my client proffered. The significant fact, however, that came out at the – that we offered subsequently is one. When he claimed no knowledge of any prior cases in his declaration of summary judgment, he didn't claim – I knew of cases, but they were all in industrial injury. So the issue there is concealment of that fact, which goes to show falsity, which in turn leads to a jury conclusion that why is he covering up? That must mean that he's attempting to prevent my client from advancing a case. Second issue – and I don't mean to cut the court – the second issue was that the – as shown in the evidence from the subsequent joint panel where he and Mr. Freitas made these statements, the alleged distinction between industrial and non-industrial injuries arose in a series of letters which occurred after the distinct – after the information at the time that he was handling my client's grievance. In other words, it couldn't have been a basis for this distinction at the time he was handling my grievance because this distinction or argument about whether industrial or non-industrial injuries should apply arose in correspondence afterwards. Well, let me go back to the questions, if I can articulate it more clearly. We review the denial for abuse of discretion, do we not? That is correct. And we're – we have what I think is a factual finding by the district judge in ruling on your motion that this new evidence would not have made a difference because of the distinction that you are quarreling with. The question I have for you is, don't we have to accept that fact unless we conclude that it was clearly erroneous in applying the abuse of discretion standard to the Court's ruling on the 16th motion? No, Your Honor, because the Court is making the Rule 60 motion following a summary judgment motion. So the question would not be whether it's clearly erroneous, which would be a trial review standard, but rather whether it would create a triable issue of fact for purposes of the statute. Would this also go to use for impeachment at the trial that was actually conducted, from which you're referring? No. There's no evidence that we knew of this information at the time of the trial. Yeah, but in – I guess in a value – were you also arguing that it was relevant for overturning the result of the retaliation decision because it was necessary to impeach him at trial? Mr. McRae just didn't testify at trial. Okay. All right. I guess I thought that the district court essentially said that given the fact that Olson knew about the distinction as of the – at least as of the time of the grievance hearing, that it couldn't have been newly discovered evidence. That is, there was enough that he knew about that would have tipped him off to pursue had he wished to pursue it. Well, Your Honor, I think that that's – if the court was helding that, then it would clearly be wrong because the court would note that we did ask questions in discovery on this, and Mr. Freitas again made the statement, we don't know. We did pursue it up with questions to UPS, and they said, we don't know, you know, who was on leave of absence, who wasn't. So to the extent that the court was thinking that we could have pursued this in some is essentially a roadblock to any type of information. On the second point, however, it seems to me that in terms of the trial, that we have no independent knowledge of what occurs and what Mr. Freitas may say in other proceedings and other times that we don't get knowledge of. We discovered this information shortly after, within about six months of the summary judgment ruling and raised it to the court in a timely manner. Actually, you know, six months – the hearing was six months. We learned that after that and raised it within a year. So I don't believe that we could have known anything about what Mr. Freitas knew about other cases until we had the admission by Mr. Freitas that he knew. We didn't have that admission until long after the summary judgment hearing was held. Or, in other words, Mr. Freitas' admission that he knew about other cases contradicts his statement that he didn't. He didn't make that admission until six months after the summary judgment motion was there, so how could we possibly put that admission that hadn't yet been made into evidence? He knew his knowledge. I would – his – That hinges on the knowledge that there was a distinction being drawn between industrial and non-industrial accidents, doesn't it? But he didn't rely on that in summary judgment, nor did they – nor did he rely on that distinction in a straightforward way. What he did was dismiss one case my client had independently brought to him on that grounds. He didn't say we had a policy. As far as Mr. Freitas' action would have been, it would have been like – it could have been just any other reason to dismiss the case. You know, well, the guy's got curly hair. You know, there would be no reason for my client to think from that brief comment that he was articulating a policy of the union that would either bear investigation or analysis at summary judgment. And they didn't make that assertion at summary judgment, either, that they were making a principal distinction between industrial and non-industrial cases. And as we pointed out in our brief, that the contract itself does not make such a distinction in terms of the ability to go back to work. Had they made such a distinction and made such an argument, our position would be that if it's not in the contract, making such a distinction is arbitrary. I mean, it's like saying you don't – you're not entitled to contract rights because we have a distinction that's extra contractual. That would be our point. On the – showing the mistake of perhaps going with the first argument at first and using up time, too much time, on the jury instructions on the trial brief. Our difficulty in summary is that the court basically – the district court basically repeated the same errors in connection with the jury's instructions that the district court made in terms of the prior appeal. As you recall, the summary judgment was granted on the theory that we didn't show decision-maker knowledge. Then on the – at trial, she then imposed – at defendant's request, imposed an instruction on us that put us – put on us the burden of proof, of proving decision-maker knowledge. That instruction was for the purpose of this case only. It wasn't derived from any model instructions. She also failed to instruct the jury on the elements that we could use to prove – assuming the case was being – the instructions were being tailored to this case, she declined to instruct the jury on the various factors relied on in the prior panel, which would – we could have used to support our case. So basically, we had additional instructions imposing a burden of proof on us that we believe the prior panel rejected. The district court's instruction on the motivating factor pretext came right out of St. Mary's. I mean, it is the model instruction, and if I understand it right, what you are urging is that in addition to that, the district court had to give an inference instruction? I believe, Your Honor, on that instruction, which I would add is different than the decision-maker instruction. No, I understand. I understand, Your Honor. But, yes, our position one is that – our position is quite different. Our position is, one, that Reeves clarified St. Mary's, so therefore, reliance on St. Mary's isn't completely accurate. Two, that in order to give a correct instruction on that, one would have had to instruct both. If you wanted to use the language from St. Mary's, you also had to include the language from Reeves. Okay. I thought that's what I was asking you, and I want to be sure I understand. You're saying you have to – that you have to add to the basic St. Mary's model Ninth Circuit instruction an inference instruction? Yes. I am. What authority do you have that a district judge must give an inference instruction? I believe – We've got law – I know we do because I wrote it – that inference instructions are very bad things, because you can infer all sorts of things. And if – once a judge starts going down that path, it's extremely dangerous. So what – what authority do you have that this is different, and so he had to give the inference instruction? Well, Reeves, I think, begins our instruction to Cassio – Cassio – But you can argue Reeves. Right. And you did, I'm sure. I'm sure we did, yes. But, Your Honor, the question is not what we argue to the jury, but what the jury is told. That's the key on instructions that the Court is well aware. On the second point, I believe that the discussions by this Court in Cassio v. Reinhold Chemicals discussed the danger of an instruction like the judge gave here on pretext that implied that we had to prove two things, where we only had to prove one. The third point I would make is that the Court's model jury instructions, as we point out in our supplemental letter, as of August of this year, have been revised precisely because of the confusion that we are – the confusion that we're raising. And in those – in the comments on that, they noticed – they noted that the instructing on the McDonnell-Douglas test had been criticized by this Court, as well as others, because of its confusing factors. And the confusing factor on the pretext element is what we've pointed out, namely, that the instruction in the language of St. Mary's is confusing without the gloss placed on it by Reeves, because what it does is it suggests, as this Court noted, I think, in Cassino – I think I've got that right – it suggests we have to prove two things, where we really only need to prove one, or, at least under the Court's new instructions, a much more global and better process. Now, we have, I think, in supplemental authority, noted the new instructions the Court has. But I think that that is the reason for the error in terms – in Reeves' problem. So in terms of – in terms of the model for discrimination cases, our authority for why that inference instruction needs to be made is because of the confusion that this particular type of inference instruction creates in this context. It's not like a typical case, because what the Court is doing is it's already embarked on instructing on inferences when it gives a McDonnell-Douglas scenario and gives the pretext instruction for McDonnell-Douglas. So in that sense, Your Honor, it's already taken a step down the inference road. So it seems to me that once you take that step down the inference road, then it seems to me you need – it isn't a question, does the Court have to give an inference instruction? Rather, it's the question is, is the instructions given by the Court clear to the jury in terms of what it has to find and what proof the plaintiff has to make? And here, because of the failure to give the additional clarifications we requested, it was not clear to the jury and suggested to the jury that we had to prove other things. And as we noted in our brief, giving the jury the instructions on business judgment as well as deference to the joint panel decision all added to that element of confusion, as well as the lack of instructions on medical evidence. But in terms of the particular thing, yes, it's my position that once you embark on giving inference instructions, you have to go down and give the correct inference instructions. Your Honor, unless the Court has other questions, I would like to reserve 4 minutes and 40 seconds for rebuttal. We're done. All right. Who's going first? May it please the Court, I have agreed to take only 5 minutes of the 20 minutes on our side, so I will be as succinct as possible. The distinction which is critical here between leaves of absence involving industrial injuries and those which are not industrial injuries was first raised and discussed during the preparation of the union and Mr. Olson for the panel hearing where his discharge was upheld. Mr. Freitas, the union representative, was told by Mr. Olson that he knew of a person, the name was Dave Lemons, who had not lost his job even though he had overstayed his leave of absence. Mr. Freitas looked into the matter and found out that that involved an industrial injury, and Mr. Freitas explained to Mr. Olson, who was already aware of this, incidentally his deposition makes that clear, that there was a very clear distinction between the two as far as the union's position was concerned. Now, this was critical to Mr. Olson's case because the contract language is very clear, it makes no distinction that if you overstay your leave of absence, you're in trouble, you can be fired. The union had taken the position that that could not be applied in that rigid way with respect to industrial injuries because of the California workers' compensation law. And that's discussed in my brief. There was no suggestion that it could not be applied, as it was by the company in this case, to individuals who did not have industrial injuries but nevertheless overstayed their case. So Mr. Olson was in a position of having to say, well, it nevertheless should not apply to me because it has not applied to others in my position. There's discrimination. That had to be his argument, and the union accepted that. And the union and Mr. Olson tried to find cases that would support that. They found one which was pressed by Mr. Freitas during his argument to the panel, but that didn't make any difference to the panel. But the point is that the newly discovered evidence relates only to cases that had industrial accidents involved. And they were different by virtue of that distinction that was discussed before the panel hearing itself. And it is for that reason that the district court said it would not have made any difference if that information had come out at any time, because there was no discrimination and that was the only argument that was possible. In sum and substance, that's our case, and I don't want to overstay my time. Thank you. Good morning, Your Honor. Clinton. Dan Clinton here on behalf of the Felony United Parcel Service. I'd like to, I guess, start with some of the questions that the panel posed to Mr. Katzenbach and also to state again that the fundamental issue in this case that was resolved by the jury was whether retaliation was a motivating factor in the adverse action that occurred in this case. And the jury in the special verdict form held precisely that in their opinion, based on all of the evidence that they heard, and they heard a considerable amount of evidence, I don't think there's any doubt that the plaintiff was allowed to produce all of the evidence that this Court on the first appeal stated was permitted, and he did so. He argued from that evidence, and the jury was not persuaded. The difficulty, of course, is that if the jury were incorrectly or inadequately instructed under Reeves or in light of Reeves, it doesn't matter much what they found. Yeah. Let me start with that, Your Honor. The Reeves case is not a change from St. Mary's. Let's start with that. The exact inference that's discussed in the Reeves case is discussed in the St. Mary's case. I can provide the cite if the Court likes, but the exact same language about what permissible inferences may be drawn from the evidence is in the St. Mary's case. The model instruction that was promulgated by this Court followed St. Mary's and didn't include that instruction, I think precisely for some of the reasons that this Court may have discussed in their questions, which is that inference was a legal analysis of sufficiency of the evidence following a jury verdict as to what evidence could support a jury verdict. It was not a statement on the burden of proof at trial. And the plaintiff – I mean, excuse me, the appellant has stated in the brief and again in argument today that the instruction that was given erroneously required him to prove two things when only one thing was required. A fair reading of St. Mary's and Reeves makes it crystal clear that you have to prove both things. You can prove the second part of it by inferential evidence. That's merely a statement of a rule of evidence, not a burden of proof instruction. That's why it's not in the model instructions, and that's why it's not error for the Court to have declined it. There are a number of inferences that can be drawn from evidence in the case, and they're typically not the subject of jury instructions, but rather argument. And then they're tested at the end if one side comes before you and suggests that the evidence was insufficient to support the verdict. So I don't believe that argument applies here. The question is, did the Court erroneously state the law on the burden of proof? And the Court did not. And I submit to you that the plaintiff, the appellant, on jury instructions stated in his own proposed jury instructions that both of those requirements must be met. So it's erroneous to suggest that only one thing needs to be proven, and that is the falsity of the explanation, without the jury also concluding that the motivation was retaliation in this case. Reeves repeats that when it says that it is not enough for the jury to disbelieve the employer. They must also believe the plaintiff's claim of retaliation. So, frankly, the instruction that the appellant suggests, the gloss that the appellant suggests should have been given, we contend would have been equally, would have been misleading, because it wouldn't have included that comment that I just made, that it is not enough just to disbelieve. So even the proposal that was made by the appellant, we think, would not have been a correct statement of either Reeves or St. Mary's. The Court instructed on the burden of proof, and correctly did so. That's not an abuse of discretion to add additional language about inferences that can be drawn from the evidence. I think that would have unfairly directed the jury in a way that may itself have been erroneous. Another comment that was made was that the Court didn't follow the this Court's opinion in the earlier appeal. And I will say, Your Honors, that that misperceives the burdens that are required at summary judgment versus the burdens that are required at trial. And one of the cases, I don't think it's been cited previously, but it was in the model jury instruction comments that were submitted just now, just recently, and it's the Sangbee decision at 328 Fed 3rd, 532 at 536, where the Court makes it clear it would have been error for the Court to instruct the jury that the prima facie case had been established at the summary judgment stage, because the Court makes it clear in that opinion that the plaintiff's burden at summary judgment is merely a burden of production. It's not a burden of proof. And that's a fundamental distinction. At trial, there is no longer a burden of production. There is a greater burden for the plaintiff. He must show he has a burden of proof. And that's how the jury was instructed on the causation element as it relates to the retaliation claim. The, again, the instruction on causation was an accurate statement of the law of this circuit, which, really, the appellant hasn't addressed. The fact that circumstantial evidence may be brought to bear to show the knowledge of the decisionmaker and to make the causal link that Cohen requires is exactly what the plaintiff was permitted to do. Hernandez makes it clear that simply because you have circumstantial evidence doesn't negate the requirement that ultimately you have the burden as an element of the retaliation claim to show the causal connection. And Hernandez says it is an element of the retaliation claim, not a defense, but an element of the claim itself. And so the fact that you can bring circumstantial evidence and ask the jury to infer that knowledge from that circumstantial evidence, it doesn't represent anything other than the same kind of decision that this Court made in Hernandez's case. The suggestion that the Court previously negated the knowledge of the decisionmaker doesn't find any basis in the record. The Court didn't directly address that issue as it has been addressed by this Court in Radd and Hernandez and even in the Cohen case, which this Court cited in the earlier appeal. And Judge Fletcher, who wrote the opinion in the Radd case, was on the panel in this case. So we have to assume that she was speaking consistently in both cases. And that's the way that you can analyze the Court's decision on the first appeal and reconcile it with the jury instruction in this case. The other assigned errors in this case, particularly the evidentiary errors, we think are puzzling. Plaintiff objects to some instruction on a panel decision, but it was the plaintiff who put the panel decision into evidence in the first place. He objects to the medical evidence that was permitted, even though he produced the medical evidence in his case in chief and opened the door and made that an issue in the proceeding. So these other evidentiary objections, Your Honor, we don't think are adequate. There's certainly no basis for a claim of error. The same is true of the motivating factor. As we pointed out in our brief, and it's been reaffirmed by the new model instructions of this Court, a motivating factor, which is the phrase that the Court used, is the phrase used by this Court repeatedly as the correct standard. It's in the model instructions. It's the instruction that was used in Zhang. It's the instruction that this Court approved in Costa, or excuse me, was the standard of proof that this Court approved in Costa. It is a correct statement of the law, and it is the jury that found that it was not a, that retaliation was not a motivating factor, not the motivating factor. And so there's no error, there's no realistic claim here that the jury could have been misled somehow into believing they had to find that retaliation was the sole reason. Nobody argued that to the jury. The jury instructions don't lend itself to that reading. And under that standard, there's been no abuse of discretion by the Court. And with respect to de novo review on the issue of causation, I think the case law supports that instruction. The facts of the case made it an appropriate instruction in this case, and nothing that the district court did did a disservice to this Court's decision in the first appeal. Those are the points I wanted to make.  Thank you, Your Honor. Mr. Katzenbach. On the latter point, on the instruction on decision-maker knowledge, I believe the only two court of appeals, court cases that have decided Gordon in the Second Circuit and Brodius in the 8th, I think, or 10th, have both rejected such an instruction. How about Rod? Excuse me? How about Rod or Rad or however it pronounces itself? I believe, Your Honor, that those cases all came up without a non-jury instruction context. In that case, they were looking only at whether or not the facts were sufficient to support a summary judgment against the defendant. I think that's a different question than imposing a burden of proof at trial, because when the judge embarked on giving this instruction, for the reasons noted in the Gordon case, what she was basically doing was taking an issue that should have been just part of the overall argument to the jury and transferring it into a burden of proof that had not been required of us on the prior appeal. The prior appeal does not say anything about our obligation to prove as part of our prima facie case anything about knowledge. It rather sets forward other things that we can use. And we, of course, in response to the instruction on decision-maker knowledge, requested that those factors, the jurors be advised of those factors to be consistent with the prior case. We didn't get that part of the instruction. So once again, I believe that what's going on here is that rather than allowing these issues to be ones of argument, which they argued is the proper way to deal with the St. Mary v. Reeves issue, here they want a specific jury instruction on the decision-maker knowledge, which has not been required by this Court or any other court of appeals, and is inconsistent with the prior appeal. With regard to the St. Mary v. Reeves argument, I don't believe once you embark on instructing the jury in St. Mary's language, it seems to me that you are now down the road and you need to make a full and correct instruction. It's not sufficient to leave that argument to just leave it to argument, because the problem isn't what the parties will argue, but what the jury looks at. And how does the jury assess the evidence? And the danger is when you instruct, you do instruct in this instruction on pretext two things. There's the and is clearly there. And the jury, as I think we argued before, is that is confusing to the jury. And I think that's why the Court has moved to a broader series of instructions in its current one. In terms of the motivating factor, I would just note that the instruction actually given by the judge was not limited to motivating factor. It included both motivating factor and that mean, and then clarified that by saying that means a but-for causation. To note the current jury instructions, the moratorium instructions, note that those are essentially two different tests. And while the motivating factor standing alone might not require an additional gloss, the new instructions are clear that the but-for standard does require the gloss of but-for does not mean the only reason. So that I don't think that had they just had the UPS's arguments here are premised on the idea that the judge gave only the motivating factor instruction, but she didn't, she combined the two. Finally, on the one argument that the union made in terms of that the union has always made a distinction between industrial injuries, which are non-8-1 and non-industrials, which are, I would point out to the Court the testimony that Mr. Freitas, the statements that Mr. Freitas was making at the grievance panel, this January grievance panel, where on page, excerpt of records, page 102 at line 11, he states the grievance, in other words, the grievance he's arguing there, he raises all these new cases, which they say were industrial injury cases, he states the grievance is a 8-1 time limit provision. On page, excerpt of records, 106 at lines 11 through 13, he says the bottom line of the grievance is the issue of the 8-1 provisions of the contract. At page 1, excerpt of records, 111, Mr. Freitas again states on page lines 9, 7 through 8, he refers to 8-1 cases as it applies to industrial, 8-1 cases as it applies to industrial injuries or illnesses. And on page 121, lines 11 through 13, and it's the company's position, the company states, other than what the contract says in 8-1s, there is no agreement that states it, that is the distinction between industrial and non-industrial grievances, other than what the contract states in 8-1. In Mr. Freitas's declaration, in opposition to summary judgment, which is reproduced You should wind up, your time is expired. I know. I have 35 seconds, Your Honor? No, you're over 37 seconds. I apologize. I thought I would have to just refer to the fact that Mr. Freitas's declaration It's just like the highway patrol, when the red light comes on, you pull over. I stop. Thank you, Your Honor. Thank you, Mr. Katsenbach. Counsel, the matter just argued will be submitted. You're okay to keep going? Okay. And we'll next hear argument in Venetian v. Laird McGovern Bovis. It was delivered this morning, I hadn't seen it yet.
judges: Rymer, Tallman, Bea